Good morning, Your Honor. Deputy Attorney General Pat Whalen for the Warden-Appellant in this case. As the Supreme Court said in Darden, there's no question that this argument properly deserves the condemnation that it has received from every court to review it. However, this argument did not make the trial fundamentally unfair, and it's for that reason that the state court decision in this case was reasonable, and the district court's failure to apply AEDPA should be reversed. First, the state court reviewed all of these claims of prosecutorial error with the entire record before it, all of the evidence, all of the instructions, the entire record of the proceedings before it, and found after reviewing that entire record that there was no fundamental unfairness. In particular, the court had before it the complete record of the jury instructions, wherein the jury was instructed, notwithstanding the arguments of the prosecutor, jury, you must base your decision on the facts. You must decide this case based on the facts and the law. You must follow my instructions. If something the attorneys say conflicts with what I say, you must follow my instructions. They were told that the jury was entitled to the, rather the defendant was entitled to the individual opinion of each juror, notwithstanding anything that the prosecutor says, told that the attorney's statements are not evidence. So in light of all of those instructions, combined with the absolute dearth of any evidence of a colorable defense in this case, there simply was no fundamental unfairness. Let's remember, you have the two victims who were shot by Mr. Razzavanzi identified them. You have uninvolved bystanders testifying about the fact that they saw Mr. Razzavanzi there pummeling the victims with the gun, the gun that was from Mr. Razzavanzi's sister-in-law. You have Mr. Razzavanzi's nephew saying, I saw him fighting these two men. No evidence whatsoever of provocation. The only issue, and that's a charitable description for the jury to decide, was whether there was self-defense, either perfect or imperfect self-defense in this case. And as I said, there was no evidence of that. But the only thing arguably supporting it was defense counsel's rather creative argument. Why in the world did the prosecutor close this case, this oral argument, the way he did? Do you have any idea? I do not. I can tell you that the law instructs us that the in- Wasn't it really outrageous? It may have been. His remarks may well have been intemperate and a poor example of an advocate's hyperbole. No question. But that just makes it error. That doesn't mean it renders the trial fundamentally unfair. Sometimes things can be so outrageous that it destroys everything. In the abstract, that's true, Your Honor, but that's not this case. This case, there's just nothing to suggest that the defendant didn't get a fair trial. The instructions of the judge, which carry far greater weight than the comments of the prosecutor, counterbalanced whatever the prosecutor said. And let's not forget, the prosecutor in this really nothing case where there is no defense, the prosecutor went on for 86 pages of transcript talking in his closing argument. And what's at issue here are maybe excerpts from three or four different pages, so literally snippets of the prosecution's closing argument, which, as I indicated, are not only counterbalanced by- He not only attacked the evidence. He attacked defense counsel. I'm not sure he- Isn't that something that the California attorney general should do something about? I'm not sure he did attack defense counsel, Your Honor. What he said was, this is a laughable argument. This notion of self-defense is laughable because there's no evidence to support it. And I think if defense counsel was in a room with his friends, they'd laugh at it. Now, that may not be the best way to say that this is a laughable defense. And, yes, certainly prosecutors should restrict their comments to the evidence rather than speculating about what defense counsel might believe about the strength of the case. But it doesn't undermine the central thesis of his argument, which is, jury, this is a silly argument. There's no facts to support it. That's not attacking defense counsel. Defense counsel has to play the cards he's dealt. And there's nothing wrong with criticizing the manner in which those cards have been played. But the ---- Evidently, the district court judge thought it was prejudicial. Why was the district court judge wrong? Because the district court judge failed to apply the AADPA, as you can tell in the second-to-last sentence of his order. He simply says, because I find Darden error, I disagree with the State court, and therefore I'm going to grant relief. That is the exact wrong standard that has been prohibited by the U.S. Supreme  It's not enough for the district court to simply disagree. It's not enough for this Court to say, if you were sitting performing de novo review, that you would find prosecutorial misconduct arising from fundamental unfairness. The test that must be applied is whether or not the State court evaluation of the entire record of the proceedings was reasonable. And if it was, habeas relief is prohibited. And so it doesn't matter that one might look at this case de novo and say, oh, yeah, this might be enough. This might be unconstitutional. Can the State court reasonably conclude, based on all of the instructions, based on the lack of any defense evidence, that in this particular case there was no constitutional error? And the State court could, because the trial court's instructions counterbalanced the various asserted errors, the various errors of the prosecution.  Thank you, Your Honor. Certainly, Mr. Holtzman. May it please the Court. My name is Victor Holtzman. I'm glad I was not the defense attorney at the trial in this case, because, as the Court has pointed out, these were truly outrageous remarks made by the. But you know what? It shouldn't have been made, but what's we're getting sort of tender about everything. What's the problem with saying that's just doesn't pass the straight-face test? I mean, it's a silly, silly argument. The prosecutor did not simply say this does not pass the straight-face test. He went beyond that. He went way beyond that. He went a little bit beyond it, but that's in effect what he was saying. He chose wrong ways to do it, and I'm not embracing that. What I'm really saying is, look, he was absolutely correct to the extent he said it doesn't meet the straight-face test. I mean, it's an absurd defense. That was a nonstarter to begin with and wasn't ever going to go anyplace. So maybe he should have saluted defense counsel for his incredible creativity, which he certainly had. But what's wrong with just calling a spade a spade? He didn't just call a spade a spade. There was a basis in the evidence in this case for a finding of imperfect self-defense. The jury could have found that. There was evidence that Mr. Razzafonsi, at his house, had twice been harassed by Hispanic men like the one he had. A month before? There were two separate incidents, one in which they tried to force entry into his home, and once in which they challenged him to a fight. Now, there was even a fight in this case, albeit in the aftermath of the shooting. But certainly – Yes, I would suppose so. And there was also evidence that Mr. Razzafonsi had some mental infirmities. So it's plausible that a jury could have found imperfect self-defense. What the prosecutor said in this case is that he not only said that doesn't fly, that's a laughable defense, he equated defense counsel's thought process with the thought process of violent criminals. He – and then as the district court judge, Judge Singleton, pointed out, interwoven with these repeated attacks on the integrity of defense counsel were the prosecutor's reference to facts outside the record, going back to juries in the 1850s. What was the repeated attack on the defense counsel? I only saw one statement. Were there more? Yes, Your Honor. The – he began by saying, I'm surprised when defense counsel was presenting this argument to you. They were all in rebuttal. He said, I'm surprised when defense counsel was presenting his self-defense slash imperfect self-defense argument to you that a smile did not crack on his face. He said, defense counsel has floated – Well, is that really attacking him? I think it is. I mean, if I'm making an argument to a jury and my colleague, my opponent, says I'm surprised that I didn't crack a smile on my face, that means that I intentionally conceived a bogus defense, floated it to the jury, and then I'm a charlatan, like Judge Singleton pointed out. You have to go a long way to get out of a not cracking a smile. Go ahead. What else did he say? Well, I don't think you have to go that far. I mean, he's calling him a dishonest attorney. He's calling him – He was saying that it was a laughable defense and it was hard for him to not crack a smile. You know, it's not a good thing that he said, but I just am thinking it's not maybe as terrible as you're saying. Okay. Well – What else? Perhaps in isolation, Your Honor. What's the second? The second thing was he characterized the defense as an absolute absurdity. The third thing is he said – Well, that's not an attack on defense counsel. Okay. Go ahead. I guess that's denigrating the defense as a sham. The defense? Right. That's all right, isn't it? To denigrate the defense as a sham, that's one of the instances of misconduct that was found by the district court in this case. Well, I'm just wondering about that. If you're saying the defense is no good, all right. What's the other attack on the defense counsel? The defense counsel floated the defense of self-defense to you, the jury, and then said to himself in his own mind, that's not my real defense here. I'm not going to be able to pull that one over on you all. My real defense is imperfect self-defense. And I'm paraphrasing, but that's the gist of what he said. He has – the prosecutor is up there in rebuttal. But what did he really say? That's what I'm interested in. The exact language, it was very similar to what I just put to you, Your Honor. It was the prosecutor is in rebuttal. Defense counsel has just spoken. The prosecutor is characterizing defense counsel's thought process when he presented self-defense and then imperfect self-defense. And he says when defense counsel presented self-defense to you, jurors, he thought to himself, well, you're not going to buy that one. So I'm going to switch or shift to my real position, my fallback position, which is imperfect self-defense. Which I think you've just indicated is basically true. I mean, the jury, you say, could have found imperfect. I mean, I think everybody here would agree couldn't possibly have found perfect. I agree. I agree. So what's wrong with saying that? The way that he put it in terms of the defense attorney is he's arguing that the defense attorney conjured up and presented a defense that just he's impugning the integrity of the defense attorney by saying there was no evidentiary basis for this defense of self-defense. And then to top it all off. Well, to say there is no evidence upon which to base a defense, that's always brought up in the trials. That isn't an attack on the attorney himself. But to say that the attorney floated a bogus defense to you all, that's the way he put it. I think he exactly used the word floated. And I know that he used the word, that's his fallback. The imperfect self-defense is his fallback position. And his fallback position is his real position. So he's floated to you all, jurors. He's just put out there a boogeyman defense. Did he use the word bogus or boogeyman? Floated. Floated is all he said. And that, well, he said that there's a fallback position and that that is the real position. I don't know how, that means that the self-defense defense was bogus. That's what the prosecutor was suggesting. The California Court of Appeals has held without any shadow of a doubt that these remarks by the prosecutor constituted willful prosecutorial misconduct, right? Correct. The district court of this case, who heard extensive evidence and material, held exactly the same. So there's no question about it that this is willful prosecutorial misconduct. Right? Correct, Your Honor. Why should we say it isn't? There's absolutely no reason you should say that. No reason. We can't do that, can we? I think as my opposing counsel acknowledged at the beginning, these remarks to the prosecutor deserve the condemnation that they've received from the California Court of Appeal, from the Judge Singleton in his opinion below, and I'm sure that this Court will characterize them as misconduct. So what do we do? Just fluff them off and forget about it? Of course, that's not the question. The Court of Appeals in the State of California was wrong in finding willful misconduct? The problem with what the California Court of Appeals did is that the California Court of Appeals did not address the due process constitutional argument that was squarely raised by a fellow counsel. The California Court of Appeals simply isolated three instances of what they characterized as misconduct. Judge Singleton in his opinion below identified quite a few more instances of misconduct than what the California Court of Appeal did. And on that point, I wanted to comment on footnote 6 of the reply brief of the Attorney General. The Attorney General says in that footnote, or excuse me, it's at page 6 of the reply brief footnote 2, that there's no support in the record for the proposition that I have urged, which is that the district court found that the prosecutor denigrated the defense as a sham, that the prosecutor implied that defense counsel believed his own client was guilty, and that the prosecutor diminished the State's burden of proof. And I've cited in my brief factual support for each one of those propositions. The reality, of course, is that assuming misconduct, that's not the question. The question is whether the California Court of Appeals' decision that that misconduct did not make the trial fundamentally unfair was an unreasonable application of U.S. Supreme Court precedent. And to the extent that the comments really were just saying, albeit improperly, that the defense was doesn't pass the straight-face test, that jurors shouldn't just go chasing all kinds of silly doubts, and that memory fades, it didn't render the trial fundamentally unfair. It wasn't unreasonable to conclude that it didn't render the trial fundamentally unfair. I agree. The California Court of Appeals' problem is did not even ask that question. They didn't ask the question, did this misconduct render the trial fundamentally unfair? They simply applied the Watson type of test. Okay. We have misconduct. Is there a reasonable likelihood that that could have affected the outcome of the case? They did not ask the due process question. That's our question. That's this Court's question. And is their determination contrary to clearly established Supreme Court precedent? It's clearly contrary to U.S. Supreme Court precedent. Which is, and why? Because they failed to conduct the constitutional inquiry. They failed to ask, did this constitute prosecutorial misconduct under U.S. Supreme Court precedent? But that's not the question. The question is whether prosecutorial misconduct fundamentally made the trial fundamentally unfair. And it did in this case. It's, I mean, I agree, and as Judge Singleton pointed out, look, the defense that was posited in this case was a long shot. But I think to any rational observer, the defense in the OJ case was a long shot. What did the jury do in that case? I mean, I think it would have been, to say that this prosecutor, when he is making remarks implying that defense counsel thinks his own client is guilty, how does that not render a trial fundamentally unfair? That the defense, that the advocate for the defendant is up here talking to the jury, floating a defense, and making up things out of the record, if you, with, in support of a historical argument, if you jurors do not find this man guilty, then you're going to be gullible like these novice 1850 San Joaquin County jurors. And there are two kinds of errors. There's trial error and there's structural error. Now, we know that this was not trial error because it could not be corrected by evidence of otherwise. Because in the California Supreme Court held that this was deliberate prosecutorial misconduct. So if it isn't trial error, it has to be structural error. And in structural error, you don't have to prove prejudice. That's correct. And it's the question is, and that never was reached by the California Court of Appeal in this case, was this a Donnelly violation? Was it a due process violation? And as this Court has held, if you establish a Donnelly violation, you have satisfied Brecht, i.e., you've satisfied prejudice. So I think that's out of my time. Kagan. Thank you. I think your time has expired. Mr. Whelan. What's your answer to trial error and structural error? Absolutely trial error, Your Honor. It's the kind of error that can be routinely, often is cured by other evidence in the case, juror instructions. How can you correct the willful misconduct of a prosecutor? Well, first of all. That has nothing to do with the trial. It's outside the trial. I disagree, Your Honor. It's right in the trial. You keep coming back to this notion that the California Supreme Court found willful prosecutorial misconduct. What the Court of Appeal found was that there was prosecutorial error that did not rise to the level of constitutional error. They didn't say error. They said misconduct. I beg your pardon, Your Honor? They didn't say error. They said misconduct. They did. They said misconduct and error. But the question is, does it rise to the level of constitutional error, i.e., rendering the trial fundamentally unfair? And the willfulness or intent of the prosecutor is irrelevant to the inquiry. You must look at the entire record of the proceedings. Whether the prosecutor did it inadvertently or not is not going to save him if the trial was rendered unfair, and it's not going to make a trial unfair if it wasn't from looking at the rest of the circumstances. With regard to the notion that the Court of Appeal failed to apply the constitutional standard, that's incorrect. The Court cited repeatedly to People v. Fry, which is one of the leading California Supreme Court cases, on prosecutorial misconduct. And in the same two pages that were cited in the Court of Appeal, the Fry case is citing Darden and Donnelly and all of the relevant constitutional standards. So there's no doubt that the Court of Appeal applied the correct constitutional standard. The notion of the defense being a long shot is, I disagree with my colleague, there's absolutely no basis whatsoever to conclude that there's any basis for self-defense. Acevedo and Serrano, the two victims in this case, testified that they had never met the defendant before, so whatever problems he may have had with these other people a month ago in the neighborhood, it wasn't these two. His nephew testified he heard no noises prior to the shooting, so there's no notion of any provocation of any kind. With regard to the notion that the prosecutor attacked defense counsel, I just don't think that's supported by the record. The one thing that arguably comes closest is the following, where the prosecutor near the end of his closing argument, he's talking about how criminals think. And he says, they think differently than you or I think, jury, you or I, or I might even say differently than Mr. Grossman thinks. So he's equating Mr. Grossman with you or I, you and me, jury, not the criminal. So if anything, I think that's the opposite of an attack on counsel. And finally, with regard to the accumulation of errors that were recited by the magistrate judge in the findings and recommendations, footnote three of the findings and recommendations, I believe it's on page six of the FNRs, makes quite clear that the magistrate judge was finding the same three errors as the California Court of Appeal. And he says, so it's not to be opaque. I'm finding the other don't amount to constitutional errors. So to try and bring in all of the other alleged instances of misconduct that were rejected by the state court and by the district court is not really helpful, not really pertinent to the analysis here. You have to analyze this case through the lens of the ADPA. You have to look at, was the state court adjudication reasonable? And if it was, there simply can be no habeas relief. And it is reasonable for the state court to find no constitutional error because, again, the jury was instructed, give the defendant your individual opinion. Don't listen to the attorney's arguments if they conflict with anything I say. He's saying error all the time. Absolutely. It's misconduct that the California Court of Appeal said. And there's a big difference between error and misconduct. Error, you make a mistake with misconduct, you deliberately do something wrong. But the Supreme Court has informed us that the intent aspect, the mental state of the prosecutor is irrelevant to this inquiry. What's relevant is, were the proceedings rendered fundamentally unfair? And in this case, given all of the instructions, the relatively minor, in terms of the volume of the prosecutor's argument, nature of the misconduct, and the absolute dearth of any defense, we cannot say that this was a fundamentally unfair trial. Thank you, Your Honor. Thank you, counsel. Both of you. The matter just argued will be submitted. Next to your argument in Cisneros. May it please the Court. My name is Mark Fine. I represent Appellant Angel Rivera, and I'm here on behalf of five other appellants in this case. In the face of a multi-count RICO conspiracy case indictment in which four of the appellants are facing the death penalty, the appellants and a number of other co-defendants agreed to enter into a joint defense agreement. That joint defense agreement occurred both in New Mexico and in Arizona after the case was transferred from New Mexico. The joint defense agreement was confirmed as complying with the standards of Stepney, both in New Mexico and in Arizona. That agreement extended attorney-client protection to certain communications and certain documents.
judges: Hug, Ferguson, Rymer